**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

MEAD JOHNSON & COMPANY, LLC and
MEAD JOHNSON NUTRITION COMPANY,

                                Plaintiffs,

               -against-

LEXINGTON INSURANCE COMPANY,

                        Defendant.

3:11-CV-00043-WGH

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT.................................................................................... 1

BACKGROUND.......................................................................................................... 3

      A.     Related-Action Is Pending .................................................................. 3

      B.     Related-Prior Arbitration .................................................................... 5

ARGUMENT ............................................................................................................... 8

A.     LEXINGTON HAS CONCEDED THAT SUBJECT MATTER JURISDICTION EXISTS ................................................................................. 8

B.     THE NEW YORK CONVENTION PROVIDES THIS COURT WITH SUBJECT MATTER JURISDICTION ......................................................... 9

C.     MEAD JOHNSON HAS SUFFICIENTLY ALLEGED JURISDICTION AND A MERITS BASED DETERMINATION ON THIS MOTION WOULD BE PREMATURE ......................................................................... 16

CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES:</u>

Anchor Glass Container Corp. v. Buschmeier,
   426 F.3d 872 (7th Cir. 2005)..................................................................... 19

Banc of Am. Leas. & Cap., LLC v. Global Grp., Inc.,
   2011 WL 1884538 (N.D. Ind. May 18, 2011)........................................ 18

Beiser v. Weyler,
   284 F.3d 665 (5th Cir. 2002).................................................................... 16

Berlitz Sch. of Languages of Am., Inc. v. Everest House,
   619 F.2d 211 (2d Cir. 1980).................................................................... 13

Bissessur v. Indiana Univ. Bd. of Trustees,
   581 F.3d 599 (7th Cir. 2009)............................................................... 16-17

Brooks v. Ross,
   578 F.3d 574 (7th Cir. 2009).................................................................... 17

Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,
   149 F. Supp. 2d 610 (S.D. Ind. 2001)................................................. 12-13

Christensen v. County of Boone,
   483 F.3d 454 (7th Cir. 2007).................................................................... 17

Evers v. Outagamie Cty.,
   202 F.3d 272 (TABLE), 1999 WL 1204551 (TEXT IN WESTLAW) (7th Cir. 1999) ......... 18

Ganahl v. Stryker Corp.,
   2011 WL 693331 (S.D. Ind. Feb. 15, 2011) ....................................... 17-18

Humphrey v. Tharaldson Enters., Inc.,
   95 F.3d 624 (7th Cir. 1996)..................................................................... 15

In re Gottheiner,
   703 F.2d 1136 (9th Cir. 1983) ................................................................ 13

In re Imperial Corp. of. Am.,
   92 F.3d 1503 (9th Cir. 1996).................................................................... 13

Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,
   141 F.3d 1434 (11th Cir. 1998)................................................................ 11

**PAGE(S)**

Infuturia Global Ltd. v. Sequus Pharms., Inc.,
    631 F.3d 1133 (9th Cir. 2011)................................................................................ 16

International Med. Grp., Inc. v. American Arb. Ass'n,
    2001 WL 315347 (S.D. Ind. Mar. 31, 2001)......................................................... 12

Jain v. de Mere,
    51 F.3d 686 (7th Cir. 1995)...........................................................................10, 11

Lander Co. v. MMP Invs., Inc.,
    107 F.3d 476 (7th Cir. 1997)................................................................................ 10

Ledee v. Ceramiche Ragno,
    684 F.2d 184 (1st Cir. 1982) .......................................................................... 11-12

Market Street Ltd. Partners v. Englander Cap. Corp.,
    1993 WL 276062 (S.D.N.Y. July 21, 1993) ......................................................... 15

Ministry of Defense of Islamic Repub. of Iran v. Gould Inc.,
    887 F.2d 1357 (9th Cir. 1989)............................................................................... 11

Montana v. United States,
    440 U.S. 147 (1979)..........................................................................................15, 19

Pintozzi v. Scott,
    436 F.2d 375 (7th Cir. 1970)................................................................................ 18

Pryner v. Tractor Supply Co.,
    109 F.3d 354 (7th Cir. 1997)................................................................................ 12

Rudell v. Comprehensive Acct. Corp.,
    802 F.2d 926 (7th Cir. 1986)................................................................................ 12

Rymer Foods, Inc. v. Morey Fish Co.,
    116 F.3d 1482 (TABLE), 1997 WL 358870 (TEXT IN WESTLAW) (7th Cir. 1997) ......... 13

Salah v. United States,
    11 Fed. Appx. 603 (7th Cir. 2001) (Unpublished) .............................................. 16

Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.,
    40 F.3d 247 (7th Cir. 1994)........................................................................... 16-17

Servaas Inc. v. Republic of Iraq,
    686 F. Supp. 2d 346 (S.D.N.Y. 2010), aff'd,
    2011 WL 454501 (2d Cir. Feb. 10, 2011) (Summary Order) ............................... 13

**PAGE(S)**

Slaney v. International Amateur Athletic Fed'n,
    244 F.3d 580 (7th Cir. 2001) .................................................................................. 12

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) .............................................................................................. 17

Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,
    536 F.3d 663 (7th Cir. 2008) .................................................................................. 16

Yusuf Ahmed Alghanim & Sons, WLL v. Toys "R" Us, Inc.,
    126 F.3d 15 (2d Cir. 1997) .................................................................................... 11

**STATUTES & OTHER AUTHORITIES:**

9 U.S.C.:
    § 202 ................................................................................................................ 10-11
    § 203 ................................................................................................................ 10, 16
    § 207 .................................................................................................................... 15

Fed. R. Civ. P. 8(a)(1) ................................................................................................ 16

Restatement (Second) of Judgments § 84(1) (1982) .................................................. 15

18 James Wm. Moore et al., Moore's Fed. Prac.: Civil (3d ed. 2011):
    § 132.03[6][f] ........................................................................................................ 15
    § 131.32[3][a] ........................................................................................................ 15

Plaintiffs Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively "Mead Johnson") respectfully submit this Memorandum, in conjunction with the accompanying Declaration of David A. Stryker ("Stryker Decl.") and Declaration of Hal S. Shaftel, in opposition to the motion by Defendant, Lexington Insurance Company ("Lexington"), to dismiss Plaintiff's Amended Complaint (the "Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(1) for alleged lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

In a bizarre motion, Lexington seeks to dismiss Mead Johnson's Complaint on the grounds of alleged lack of subject matter jurisdiction. Lexington brings this motion even though Lexington does not (and cannot) challenge this Court's subject matter jurisdiction in a pending related case in which it is a party involving squarely overlapping insurance coverage claims and parties, and even though the Complaint clearly sets forth the factual basis for federal jurisdiction arising out of enforcement of a prior arbitration award. This motion, frankly, represents yet another attempt by Lexington, together with its affiliate insurer, National Union Fire Insurance Co. of Pittsburgh, PA ("National Union" and, together with Lexington, "Insurers"), to erect every possible roadblock, no matter how irresponsible, to complicate and convolute Mead Johnson's ability to expeditiously and efficiently litigate its claims on the merits. As further discussed below, the arguments set forth in Lexington's brief in support of its motion ("Lex Br.") fail for several independent reasons:

First, Lexington's motion is groundless – and a waste of time and resources – because this case is subject to consolidation with closely related litigation pending before this Court in which Lexington is a party and in which Lexington does not contest subject matter jurisdiction. See National Union Fire Ins. Co. of Pitt., Pa. v. Mead Johnson & Co., Case No.

3:11-cv-00015-RLY-WGH ("Indiana I" and, together with this case, the "Present Litigation"). As the Court is aware, Mead Johnson has a pending motion in Indiana I to consolidate these cases – which involves the same parties, the same insurance policies, the same insurance coverage, and the same underlying advertising activities. There is no basis – apart from their strategic goal of creating undue delay and burden – for the Insurers to oppose consolidation, just as there is no basis for Lexington to claim lack of subject matter jurisdiction here. By virtue of consolidation, the very foundation of the supposed lack of jurisdiction will crumble, since Lexington does not dispute subject matter jurisdiction over the same claims pending in the Indiana I case before this Court.

Second, even apart from consolidation, Mead Johnson properly predicates subject matter jurisdiction on the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), as codified at 9 U.S.C. § 201 et seq., by virtue of a prior arbitration award which precludes the core of Lexington's claimed defenses to coverage to Mead Johnson on the claims at issue in this action as well as in the Indiana I action. A full and final award was rendered in a prior arbitration with Lexington's closely related affiliate, with whom it had and has operated in an integrated and consolidated manner, concerning virtually identical claims for coverage arising from virtually identical underlying claims of advertising injury as are at issue in this litigation. Mead Johnson is entitled to the preclusive effect of that prior award, which in turn gives rise to federal jurisdiction under the New York Convention.

Third, Mead Johnson more than adequately alleged the factual basis for federal subject matter jurisdiction. Recognizing that subject matter jurisdiction is properly pled, Lexington resorts to arguing over the underlying merits of the case. While Mead Johnson is eager for the opportunity to do so, that is not the proper role of this Memorandum, or

Lexington's motion.   Indeed, Lexington did not move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted.

Accordingly, Lexington's motion to dismiss for lack of subject matter jurisdiction should be denied.

## BACKGROUND

### A.  Related-Action Is Pending

Mead Johnson purchased an integrated tower of insurance coverage from the two affiliated Insurers, National Union and Lexington, which are both member companies or subdivisions of American International Group, Inc. ("AIG").   National Union issued Mead Johnson Commercial General Liability Policy No. 090-72-27 (the "National Union Policy"), Lexington issued Mead Johnson Umbrella Liability Policy No. 065302639 (the "Lexington Policy" and, together with the National Union Policy, the "Policies"),[1] with both Policies providing essentially identical advertising liability coverage.   Compl. ¶ 7.

In connection with Mead Johnson's advertising campaign concerning its infant formula product, Enfamil LIPIL®, PBM Products, LLC ("PBM") brought suit against Mead Johnson (the "Underlying PBM Claim").   See Compl. ¶¶ 1, 12-13.   On or about November 10, 2009, the jury hearing the Underlying PBM Claim reached a verdict as against Mead Johnson in the amount of $13,500,000.   Id. ¶¶ 16-17.   On April 20, 2011, the United States Court of Appeals for the Fourth Circuit affirmed the jury verdict.   See PBM Prods., LLC v. Mead Johnson & Co., No. 10-1421 [DI 63], 2011 WL 1491066 (4th Cir. Apr. 20, 2011).   Mead Johnson seeks coverage under the Policies for that Underlying PBM Claim.   Compl. ¶¶ 15, 17.

---

[1]    Copies of the Lexington Policy and National Union Policy are attached as Exhibits 1 and 2, respectively, to the Declaration of Hal S. Shaftel.

In connection with the very same advertising campaign for the very same product that gave rise to the Underlying PBM Claim, certain consumers of Enfamil LIPIL® commenced class actions against Mead Johnson (the "Underlying Consumer Claims" and, together with the Underlying PBM Claims, the "Underlying Claims").  Those Underlying Consumer Claims were subject to multi-district litigation (MDL) procedures, transferred to, and consolidated before the United States District Court for the Southern District of Florida.  See In re: Enfamil LIPIL Mktg. & Sales Pracs. Litig., Case No. 0:11-md-02222-JIC (the "MDL Court").  Compl. ¶ 16.  On or about March 15, 2011, the parties in that case filed with the MDL Court a stipulation of settlement, in an amount to be determined but expected to range between $8 million - $12 million, and requested nationwide class certification for settlement purposes.  See 0:11-md-02222-JIC (Mar. 15, 2011 Stipulation of Settlement) [DI 26].  On or about March 18, 2011, the MDL Court entered an order certifying the nationwide class, consisting of "[a]ll purchasers of Enfamil LIPIL® infant formula in the United States" and preliminarily approving the settlement. See 0:11-md-02222-JIC (Mar. 18, 2011 Order) [DI 28].  Mead Johnson seeks coverage under the Policies for the Underlying Consumer Claims.  Compl. ¶¶ 15, 17.

For over a year, Mead Johnson negotiated with both Insurers for application of coverage for the Underlying Claims.  Compl. ¶¶ 13-14.  During these negotiations, both Insurers were represented by their affiliate, Chartis, with respect to claims administration, as well as by the same counsel.  Id. ¶ 14.  Then, in early 2011, without notice or prior warning, National Union sued Mead Johnson in the Indiana I action for declaratory relief solely with respect to the Underlying PBM Claim, failing to join Lexington, and alleging no coverage was owed with respect to the Underlying PBM Claim.  Id. ¶¶ 16-17.  Subsequently, National Union sued Mead Johnson in the District of Massachusetts for declaratory relief solely with respect to the consumer class actions, again failing to join Lexington, and alleging that no coverage was owed

with respect to the Underlying Consumer Claims (the "Massachusetts Action").  Mead Johnson has asserted counterclaims against Insurers in Indiana I, moved to transfer the Massachusetts Action to Indiana I and, on March 22, 2011, Mead Johnson commenced this case against Lexington.

On April 6, 2011, Mead Johnson amended its counterclaim against Lexington and filed a motion in Indiana I to consolidate this suit with that case, since the claims and issues in both substantially overlap.  Mead Johnson has filed these pleadings and briefs with an aim towards litigating the issue of coverage with both Insurers, under both Policies, for all of the Underlying Claims arising out of the same false advertising at one time and in one forum.

In connection with the Present Litigation, Insurers assert various arguments and purported defenses to coverage.  For example, Insurers assert, among other things, that Mead Johnson's underlying advertising activities occurred before the period covered under the Policies.  Insurers raise the defense that Mead Johnson failed to provide timely notice of the Underlying Claims.  Insurers raise the defense that the conduct does not constitute advertising injury.  Insurers also raise the defense that Mead Johnson failed to cooperate.  See Indiana I, Complaint [DI 1] ¶ 40; see also National Union Answer [DI 81] at Affirmative Defenses Numbered Tenth, Twelfth, Fifteenth; see also Lexington Answer [DI 82] at Affirmative Defenses Numbered Tenth, Twelfth, Thirteenth, Fifteenth.

**B.**     **Related-Prior Arbitration**

Previously, Mead Johnson arbitrated to final conclusion in 2003 (the "Prior Arbitration") claims for coverage with respect to certain policies issued by another corporate affiliate of AIG, named AIU Insurance Company ("AIU"), arising from defense costs and indemnity amounts paid to defend and resolve claims by PBM Products, LLC for Mead Johnson's allegedly false and misleading advertising of its infant formula product.  See Stryker

Decl. ¶¶ 4-6.  As AIG affiliated companies, Lexington, National Union and AIU are all closely related and operate in conjunction.[2]  See Stryker Decl. ¶ 4.

The relevant language contained in that insurance policy (the "AIU Policy") concerning coverage for advertising injury is identical or substantively identical to the language in the Lexington Policy (as well as the National Union Policy).  Stryker Decl. ¶¶ 6-7.  For example:

> The policies have substantively the same definitions of advertising liability.  The AIU Policy provided that "Advertising Liability" means "liability or alleged liability" for "libel, slander or defamation" or "any infringement of copyright or of title or of slogan" or "piracy or misappropriation of ideas under an implied contract" or "any invasion of right of privacy" which was "committed or alleged to have been committed subsequent to the Inception Date (or, if applicable, the Retroactive Coverage Date) in any advertisement, publicity article, broadcast or telecast and arising out of the Insured's advertising activities."  Id. ¶ 6.  Likewise, the Lexington Policy defines advertising liability "material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services" or "[i]nfringement upon another's copyright, trade dress or slogan" or "use of another's idea" or "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."  Lexington Policy, § IV, S.

> The policies have substantively the same provisions concerning retroactive coverage.  The AIU policy addressed coverage for liability imposed as it relates to a "Retroactive Coverage Date."  See Stryker Decl. ¶ 6.  Likewise, the Lexington Policy addresses coverage for liability imposed as it relates to a "Retroactive Date."  Lexington Policy, § VI, Q, 2.

> The policies have substantively the same provisions concerning cooperation.  The AIU Policy provided that the insurers had the right to associate with Mead Johnson and to "cooperate in all things in the defense of such Claim suit or proceeding."  See Stryker Decl. ¶ 6. Likewise, the Lexington Policy required Mead Johnson to "cooperate" in the "investigation, settlement or defense of a claim." Lexington Policy, § VI, G, 3.

> The policies have substantively the same provisions concerning the timing of notice of underlying claims.  The AIU Policy provided that Mead Johnson

---

[2]   For example, these AIG affiliated companies market themselves as part of an integrated family of insurance companies; regularly share common agents and counsel for purposes of claims administration and take common, coordinated coverage positions; and routinely coordinate and consolidate risks for reinsurance purposes. See Stryker Decl. ¶ 4.

provide notice "as soon as practicable." <u>See</u> Stryker Decl. ¶ 6.  Likewise, the Lexington Policy (which contains modifications not relevant here) requires notice "as soon as practicable." Lexington Policy, § VI, G, 1.

Additionally, the AIU Policy at issue in the Prior Arbitration had several international aspects and, by special endorsement, the parties superseded the wording of the policy and replaced it with the "European Liability Market Slip Policy Wording."  Stryker Decl. ¶ 9.  This Slip Policy Wording required that any dispute arising out of the policy "shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented."  The AIU Policy also allowed application to the High Court of England for the appointment of arbitrators in some circumstances.  <u>Id.</u>

In the Prior Arbitration, as in the Present Litigation, Mead Johnson sought coverage determinations with respect to both indemnity and defense costs for advertising liability to PBM under policies issued by an AIG company.  In the Prior Arbitration, the AIG company, AIU, asserted various defenses, including, among other things, that Mead Johnson failed to give notice to the insurer of the underlying claim "as soon as practicable," as provided for by the policy at issue, and that the insurer was thereby prejudiced in its ability to involve itself in the underlying litigation – which the Insurers also raise in the Present Litigation.

AIU also asserted purported coverage defenses involving the alleged scope of advertising liability coverage, as well as the application of the policy's Retroactive and Inception Dates to determine whether coverage existed with regard to the underlying claims – which is an issue the Insurers also raise in the Present Litigation. By way of example only, the AIG affiliate argued that had notice been given in a timely fashion, it would have been under the policy in effect for the period prior to the Retroactive Date, when the AIG affiliate had only 50%, not 100%, of the applicable layer of coverage and faced a smaller monetary exposure.  That issue directly involved the determination of where underlying advertising conduct fell during the

period for which advertising liability coverage was provided – the same issue raised in the Present Litigation.   In another similarity, the Prior Arbitration addressed AIU's purported defense that coverage was excluded because the underlying conduct involved alleged statutory violations while, in the Present Litigation, the Insurers assert that coverage does not exist because the underlying conduct involved alleged unlawful and intentionally false advertising by Mead Johnson.

On June 11, 2003, the panel for the Prior Arbitration issued a final award, which required AIU to pay: $24,611,357.99 for its liability under the AIU Policy; $1,617,514.38 for pre-judgment interest; and $634,397.36 for defense and compliance-related costs (the "Prior Award").   Stryker Decl. ¶ 11.   AIU paid the monetary amounts due under the final award in the Prior Arbitration.

## ARGUMENT

### A.   LEXINGTON HAS CONCEDED THAT SUBJECT MATTER JURISDICTION EXISTS

In bringing its motion to dismiss this case for lack of subject matter jurisdiction, Lexington entirely ignores the fact that it does not contest subject matter jurisdiction in the closely related Indiana I case in which it is a party.   This case and Indiana I involve the same policyholder, Mead Johnson, the same insurance policies, and the same claims and coverage determinations regarding the same Underlying Claims – and are pending in the same courthouse. Given the identity of claims between this case and Indiana I, it is a waste of time and resources for Lexington to oppose consolidation as it does, and to seek to dismiss these claims for lack of subject matter jurisdiction as it does – particularly since no similar challenge exists with respect to the Indiana I claims.

If this Court grants Mead Johnson's motion to consolidate, National Union's motion to dismiss becomes moot because these claims will proceed with the overlapping claims as to which no dispute exists over subject matter jurisdiction. The entire foundation of this motion thus crumbles. The only plausible explanation for why Lexington has made this motion (and Insurers have opposed consolidation), is to further the Insurers' strategy of creating unnecessary delay in the adjudication of their coverage dispute with Mead Johnson concerning the Underlying Claims. That provides no basis for the dismissal of these claims.

## B.    THE NEW YORK CONVENTION PROVIDES THIS COURT WITH SUBJECT MATTER JURISDICTION

Even independent of the outcome of the pending consolidation motion, subject matter jurisdiction exists over Mead Johnson's claims in this case by virtue of the New York Convention. This case involves the enforcement of the Prior Award as entered in favor of Mead Johnson and against Lexington's affiliated insurer, AIU, in the Prior Arbitration. As AIG member companies, both AIU, Lexington (and National Union) operate in privity and in an integrated and closely coordinated manner with respect to insurance transactions, marketing, and claims administration. In the Prior Arbitration, the same issues presented by the case were adjudicated to final conclusion. Just like here, the Prior Arbitration involved both Mead Johnson and an AIG affiliate insurer; coverage for indemnity and defense costs for advertising liability, including amounts paid in connection with claims by PBM; purported coverage defenses involving, among other things, alleged late notice, the alleged scope of advertising injury, and considerations of timing of the underlying advertising activities for purposes of coverage determinations. Based on expressly labeled European-based policy wording, the AIU Policy itself and the Prior Arbitration thereunder were international in character, falling under the New York Convention. As such, this Court has subject matter jurisdiction to consider Mead

Johnson's entitlement to the preclusive effect of that Prior Award.  The evidence will show that Lexington (and National Union) are alter egos of their affiliate AIU for the purpose of binding them to the determinations made in the Prior Arbitration.

By virtue of the Prior Arbitration, Mead Johnson properly has asserted that this Court has subject matter jurisdiction pursuant to the New York Convention.  See Compl. ¶ 4; see also Lander Co. v. MMP Invs., Inc., 107 F.3d 476, 479 (7th Cir. 1997); Jain v. de Mere, 51 F.3d 686, 689 (7th Cir. 1995).  Under 9 U.S.C. § 203, which embodies the New York Convention and related jurisdiction under the FAA, United States District Courts have original jurisdiction over actions and proceedings falling under the New York Convention.  Specifically:

> An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.  In order to "fall under" the New York Convention, an arbitration agreement or arbitral award must be one that arises:

> out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.  An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

-10-

9 U.S.C. § 202.  Accordingly, any agreement or award, even one "entirely between the citizen of the United States," falls under the New York Convention if it:  (a) envisages "enforcement abroad"; or (b) "has some other reasonable relation with one or more foreign states."  Id.

The AIU Policy fits both of these categories and, is an international contract – which even Lexington concedes would constitute an agreement falling under the New York Convention (see Lex Br. at 7) – for two reasons.

First, the AIU Policy, by special endorsement, superseded the wording of the policy and replaced it with the "European Liability Market Slip Policy Wording."  See Stryker Decl. ¶ 9.  Such agreements are international in character and fall under the New York Convention.  See Jain, 51 F.3d at 689.

Second, the European Liability Market Slip Policy Wording provided that any dispute arising under or relating to the Policy "shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented."  See Stryker Decl. Ex. 9.  The policy went further and provided for application to the High Court of England for the appointment of arbitrators under certain circumstances.  While the parties agreed to dispense with some of the English law aspects, the entire arbitration indisputably was based on the European Liability Market Slip Policy Wording.  See id.  Without doubt the Prior Arbitration fell under the New York Convention.

Indeed, arbitration agreements and awards fall under the New York Convention where they were made within the legal framework of another country and particularly where they are pronounced in accordance with foreign law.  Jain, 51 F.3d at 689; see also Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1441 (11th Cir. 1998); Yusuf Ahmed Alghanim & Sons, WLL v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997); Ministry of Defense of Islamic Repub. of Iran v. Gould Inc., 887 F.2d 1357, 1362 (9th Cir. 1989); Ledee

v. Ceramiche Ragno, 684 F.2d 184, 186-87 (1st Cir. 1982).  Further, the New York Convention has been extended to arbitration agreements found within insurance contracts.  International Med. Grp., Inc. v. American Arb. Ass'n, 2001 WL 315347, at *6 (S.D. Ind. Mar. 31, 2001).  Thus, the Prior Arbitration, conducted pursuant to that AIU Policy, fell under the New York Convention.

Despite its extensive briefing on the issue, Lexington's argument that the Federal Arbitration Act (the "FAA") does not provide this Court with jurisdiction misapprehends the point.  See Lex Br. at 3-4.  Regardless of whether or not the FAA itself provides an independent basis for subject matter jurisdiction, what Lexington overlooks is that the FAA codifies and embodies the New York Convention under Chapter 2 (9 U.S.C. § 201 et seq.), and the New York Convention does provide this Court with subject matter jurisdiction.

Here, and in the closely related Indiana I action, Insurers seek to run from the Prior Arbitration and force Mead Johnson to relitigate certain issues that are identical to issues that AIU litigated and lost in the Prior Arbitration.  That is improper, as the Prior Award precludes these AIG affiliates from relitigating claims and issues, both on res judicata and on collateral estoppel grounds.  See Rudell v. Comprehensive Acct. Corp., 802 F.2d 926, 932-33 (7th Cir. 1986) (finding plaintiff's claims were barred by res judicata because they could have been raised in a previous binding arbitration between the parties); Slaney v. International Amateur Athletic Fed'n, 244 F.3d 580, 591-92 (7th Cir. 2001) (affirming dismissal of claims where plaintiff attempted to relitigate issues already decided in an earlier arbitration falling under the New York Convention); Pryner v. Tractor Supply Co., 109 F.3d 354, 361 (7th Cir. 1997) (finding that an arbitration decision can have res judicata and collateral estoppel effects); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 149 F. Supp. 2d 610, 613-14 (S.D. Ind. 2001) (holding that defendants' attempt to re-contest an issue decided in arbitration was barred by res judicata

and collateral estoppel); <u>Berlitz Sch. of Languages of Am., Inc. v. Everest House</u>, 619 F.2d 211, 215-16 (2d Cir. 1980) (holding that prior Lanham Act proceedings had preclusive effect under doctrines of both res judicata and collateral estoppel as against subsequent action); <u>Servaas Inc. v. Republic of Iraq</u>, 686 F. Supp. 2d 346, 359-60 (S.D.N.Y. 2010) (finding estoppel was applicable to non-signatory to arbitration agreement falling under the New York Convention under alter ego theory), <u>aff'd</u>, 2011 WL 454501 (2d Cir. Feb. 10, 2011) (Summary Order). "'Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion.'"  <u>Rymer Foods, Inc. v. Morey Fish Co.</u>, 116 F.3d 1482 (TABLE), 1997 WL 358870, at **5-6 (TEXT IN WESTLAW) (7th Cir. 1997) (finding preclusion against party in privity with previous litigant) (<u>quoting</u> <u>In re Imperial Corp. of. Am.</u>, 92 F.3d 1503, 1506 (9th Cir. 1996)); <u>In re Gottheiner</u>, 703 F.2d 1136, 1139-40 (9th Cir. 1983) (common ownership can establish privity).  The Prior Arbitration is controlling on this case in various respects.

   Based on substantively identical policy language, both the Prior Arbitration and Present Litigation cover many of the same core coverage issues.  For example, both the Prior Arbitration and the current dispute cover claims arising from advertising activities, including indemnity and defense claims, involving a lawsuit by PBM, under policies in which the definition of advertising liability was nearly identical.  Indeed, both the Prior Arbitration and the Present Litigation concern arguments and defenses by the insurance carrier that the same advertising-related activities did not constitute advertising liability; that Mead Johnson provided untimely and/or improper notice of those claims; that prejudice to the carrier was created as a result of the alleged untimely and/or improper notice; that Mead Johnson failed to cooperate with the insurer; and that some or all of the advertising activities occurred outside the applicable

coverage period, to the insurance carrier's prejudice.  In summary, the chart below identifies

certain of the primary areas of overlap between the Prior Arbitration and the Present Litigation:

| Areas of Overlap | Present in Both Prior Arbitration and Present Litigation? | Reasons for Overlap |
|---|---|---|
| Same Parties or Privity/Alter Ego | Yes | All AIG affiliates |
| Same or Substantively Similar Policy Language | Yes | Advertising Injury<br><br>Notice of Claim<br><br>Retroactive Date<br><br>Assistance & Cooperation |
| Same Underlying Claims | Yes | Advertising injury, including claims by PBM Products, LLC |
| Same Underlying Claimant | Yes | PBM |
| Same Types of Loss | Yes | Indemnity and defense costs |
| Overlapping Issues | Yes | Whether the underlying claims or matters constitute "personal and advertising injury" under the relevant policies.<br><br>Whether Mead Johnson provided timely and proper notice of the claim as required by the relevant policies/prejudice.<br><br>Whether Mead Johnson cooperated with the Insurers as required by the relevant policies.<br><br>Whether any covered offense occurred during the Policy Period.[3] |

---

[3]   See Stryker Decl., ¶¶ 6, 8; Lexington Policy §§ IV S, VI G (1), VI G (3); see also  Indiana I (Lexington Answer) [DI 82] at Affirmative Defenses Numbered  Tenth, Twelfth, Thirteenth, Fifteenth.

See Stryker Decl. ¶ 12.   The determinations from the Prior Arbitration are applicable and controlling on the outcome of the Present Litigation.

Lexington's argument that Mead Johnson's assertion of jurisdiction under the New York Convention "is time-barred as a matter of law" is specious.   See Lex Br. at 5 (citing 9 U.S.C. § 207).   Putting aside that issues concerning the length of a period of limitation are not related to subject matter jurisdiction and hence inappropriate for resolution on this motion to dismiss, 9 U.S.C. § 207 creates a three-year period of limitation for a party to arbitration to apply "for an order confirming [an] award."   9 U.S.C. § 207 (emphasis added).   Mead Johnson is not seeking an order confirming the Prior Award; Mead Johnson is asserting preclusion principles based on that fully and finally decided Prior Award, which Lexington itself acknowledges.   See Lex Br. at 6 n.1.   Preclusion principles are not time-barred; indeed, Lexington does not and cannot cite any legal authority that applies any time bar to principles of preclusion.

It is a fundamental precept of adjudication, based in fairness and judicial economy, that a right, question or fact distinctly put in issue and directly determined "'cannot be disputed in a subsequent suit by between the same parties or their privies,'" – without regard to the passage of time.   See Montana v. United States, 440 U.S. 147, 153 (1979) (citation omitted); see also Humphrey v. Tharaldson Enters., Inc., 95 F.3d 624, 627 (7th Cir. 1996) (concluding that due to the applicability of preclusion, no consideration was required as to whether action was time-barred).   To the contrary, "it is well-settled that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration."   18 James Wm. Moore et al., Moore's Fed. Prac.: Civil § 132.03[6][f] (3d ed. 2011); id. § 131.32[3][a]; see also Restatement (Second) of Judgments § 84(1) (1982).   Further and, as a general matter, collateral estoppel may apply to questions or law as well as issues of fact.   See, e.g., Montana, 440 U.S. at 162-63; Market Street Ltd. Partners v. Englander Cap. Corp., 1993 WL 276062, at *2 (S.D.N.Y. July 21, 1993).

The Ninth Circuit's recent decision in <u>Infuturia</u> is instructive.  There, in the context of removal jurisdiction, the Ninth Circuit held that "where the defendant relies on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration, the arbitral award 'could conceivably affect the outcome of the case.'"  <u>Infuturia Global Ltd. v. Sequus Pharms., Inc.</u>, 631 F.3d 1133, 1138-39 (9th Cir. 2011) (<u>quoting</u> <u>Beiser v. Weyler</u>, 284 F.3d 665, 669 (5th Cir. 2002)).  As a result, the court held that there was federal jurisdiction over the claim.  <u>Id.</u> at 1139.  For that matter, in <u>Beiser</u>, which was relied upon in <u>Infutria</u>, the Fifth Circuit concluded that a district court had jurisdiction "over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense."  284 F.3d at 669.

Accordingly, Mead Johnson's entitlement to assert such principles of law based on the Prior Award renders this action one that falls under the New York Convention, thus giving this Court "original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203; <u>see</u> <u>Lander</u>, 107 F.3d at 479.

## C.   MEAD JOHNSON HAS SUFFICIENTLY ALLEGED JURISDICTION AND A MERITS BASED DETERMINATION ON THIS MOTION WOULD BE PREMATURE

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must simply contain "a short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1).  It is a "lenient standard" (<u>Salah v. United States</u>, 11 Fed. Appx. 603, 606 (7th Cir. 2001) (Unpublished)) and, within the Seventh Circuit, "notice pleading remains the standard" (<u>accord Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.</u>, 536 F.3d 663, 667 (7th Cir. 2008)).  A claimant is entitled to "'the benefit of imagination, so long as the hypotheses are consistent with the complaint.'"  <u>Bissessur v. Indiana Univ. Bd. of Trustees</u>, 581 F.3d 599, 603 (7th Cir. 2009) (<u>quoting</u> <u>Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d

247, 251 (7th Cir. 1994)).  "Together, these rules ensure that claims are determined on their

merits rather than on pleading technicalities."  Christensen v. County of Boone, 483 F.3d 454,

458 (7th Cir. 2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)); Brooks v.

Ross, 578 F.3d 574, 580 (7th Cir. 2009).

As a last resort, Lexington asserts that Mead Johnson "fail[ed] to allege facts

establishing how the 'New York Convention' confers jurisdiction," presumably to bolster its

argument for dismissal.  See Lex Br. at 4.  Of course, Lexington moved under Rule 12(b)(1) of

the Federal Rules of Civil Procedure, not 12(b)(6).  Furthermore, even a cursory review of the

Amended Complaint reveals that Mead Johnson did plead clear facts to establish the manner in

which the New York Convention is applicable.  As Mead Johnson alleged:

> With respect to earlier policies issued by another corporate affiliate
> of Lexington and National Union, named "AIU", Mead Johnson
> arbitrated (pursuant to a special purpose arbitration agreement) to
> final conclusion claims for coverage arising from defense costs and
> indemnity amounts paid to defend and resolve earlier claims by
> PBM Products, LLC for advertising injury against Mead Johnson
> ("Prior Claim Resolution").

Compl. ¶ 22.  Mead Johnson further alleged that:

> The Prior Claim Resolution binds Lexington now and estops and
> precludes it from asserting all or some of the defenses and
> avoidance assertions made in respect of the Underlying Claims.
>
> Lexington's assertion of all or some of the defenses and avoidance
> assertions made in respect of the Underlying Claims breach the
> Prior Claim Resolution and entitle Mead Johnson to damages, to
> be ascertained at trial, including without limitation costs and
> attorneys' fees incurred in this and any related actions.

Id. ¶¶ 30-31.  Those allegations would be more than sufficient for the Court to deny a 12(b)(6)

motion to dismiss, had Lexington actually made such a motion, and are certainly sufficient for

Lexington's 12(b)(1) motion.  Ganahl v. Stryker Corp., 2011 WL 693331, at *1 (S.D. Ind. Feb.

15, 2011) (a court should "accept all well-pleaded facts as true, draw all inferences in favor of the plaintiff, and resolve all ambiguities in favor of the plaintiff").

This motion is not the appropriate juncture to determine if Mead Johnson's res judicata and collateral estoppel assertions are right or wrong.  See Banc of Am. Leas. & Cap., LLC v. Global Grp., Inc., 2011 WL 1884538, at *4 (N.D. Ind. May 18, 2011) ("The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits").  Nevertheless, to the event the Court wishes to see more, Mead Johnson intends to prove the following facts, which it believes are undisputed:[4]

First, all three AIG affiliates are directly and indirectly related and controlled as to be considered the same entity or alter egos of each other.  See Stryker Decl. ¶¶ 3-4.

Second, in the Prior Arbitration, the underlying causes of action were precisely what they are in the action underlying this action:  false advertising claims by PBM against Mead Johnson relating to Mead Johnson's advertising of its infant formula.

Third, in the Prior Arbitration, and the Present Litigation, the underlying claims caused Mead Johnson to incur both indemnity and defense dollars for which it sought coverage. In both cases the carrier refused to satisfy its obligations.  See Stryker Decl. ¶¶ 5-6.

Fourth, the policy language in the Prior Arbitration is substantively the same and/or identical to the language that the AIG affiliates are relying on in the Present Litigation, including without limitation: insuring provisions; the notice provisions; the inception date provisions – all of which the AIG affiliates now claim provide defenses to Mead Johnson's

---

[4]    Although the Complaint clearly satisfies notice pleading requirements, Mead Johnson is entitled – as it does in part through the Stryker Declaration – to reference facts outside of the pleadings in opposing a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Evers v. Outagamie Cty., 202 F.3d 272 (TABLE), 1999 WL 1204551, at *5 (TEXT IN WESTLAW) (7th Cir. 1999); Pintozzi v. Scott, 436 F.2d 375, 378 n.3 (7th Cir. 1970).

claims for coverage, just as the AIG affiliate previously claimed in the Prior Arbitration. <u>See</u> Stryker Decl. ¶¶ 6-7.

<u>Fifth</u>, in the Prior Arbitration these provisions were actually or necessarily litigated, the amounts at stake were more than sufficient to ensure that the issues were litigated aggressively by both sides, and in each of the cases the AIG affiliate lost. In the Prior Arbitration, the AIG affiliate paid $24,611,357.99 for its liability under the challenged policy; $1,617,514.38 for pre-judgment interest; and $634,397.36 for defense and compliance-related costs. <u>See</u> Stryker Decl. ¶ 8.

The cases are uniform that, in such a case as this, the attempt at relitigation is improper and should be precluded. <u>Montana</u>, 440 U.S. at 153; <u>Anchor Glass Container Corp. v. Buschmeier</u>, 426 F.3d 872, 877-78 (7th Cir. 2005).

## CONCLUSION

For the foregoing reasons, Mead Johnson respectfully submits that the Lexington motion to dismiss the Amended Complaint should be denied.

Dated: Evansville, Indiana
      May 24, 2011

CADWALADER, WICKERSHAM &  TAFT LLP

/s/  *Louis M. Solomon*
Louis M. Solomon, Esq.
Hal S. Shaftel, Esq.
One World Financial Center
New York, NY  10281
(t) 212.504.6000
(f) 212.504.6666

VANDENBERG & FELIU, LLP
Bertrand C. Sellier, Esq.
60 East 42nd Street, 51st Floor
New York, New York 10165
(t) 212.763.6800
(f) 212.763.6810

BOWERS HARRISON, LLP
Mark E. Miller, Esq.
James E. Gentry, Jr., Esq.
25 N.W. Riverside Drive, 2d Floor
Evansville, Indiana 47708
(t) 812.426.1231
(f) 812.464.7100

*Attorneys for Mead Johnson & Company, LLC and Mead Johnson Nutrition Company*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint was filed electronically.  Notice of this filing will be sent to the following parties either by the operation of the Court's electronic filing system or via U.S. Mail this 24th day of May, 2011:

Brent R. Weil
bweil@k-glaw.com

Daniel I. Graham, Jr.
dgraham@bcnlaw.com

John E. Rodewald
jrodewald@bcnlaw.com

Kase L. Stiefvater
kstiefvater@k-glaw.com

Laura A. McArdle
lmcardle@bcnlaw.com

Mark D. Gerth
mgerth@k-glaw.com

Mary F. Licari
BATES CAREY NICOLAIDES, LLP
191 North Wacker, Suite 2400
Chicago, IL  60606

Richard H. Nicolaides, Jr.
rnicolaides@bcnlaw.com


                                    /s/Louis M. Solomon
                                    Louis M. Solomon

-21-